IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Richard Aguirre,<br><br>    Plaintiff,<br><br>vs.<br><br>R. Lopez; D. Adams; F. Fields;<br>M. Jennings; and J. Kavanaugh.<br><br>    Defendants. | No. CV 1-08-980-FRZ<br><br>**ORDER** |

    Plaintiff Richard Arthur Aguirre, committed to the custody of the California Department of Corrections and presently confined in the Calipatria State Prison, Calipatria, California, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.

    The Second Amended Complaint (Doc. 17), filed March 13, 2009, is the operative Complaint. Following the Court's statutorily required screening, this action proceeded on Count I against remaining Defendants Chief Deputy Warden Raul Lopez; Warden D. Adams; Captain F. Fields; and Captain M. Jennings.

    Count II of the Second Amended Complaint was dismissed, which alleged a violation of Plaintiff's right of access to the courts.

    In Count I, Plaintiff alleges that the named prison officials were deliberately indifferent to Plaintiff's basic human need for outdoor exercise when he was placed in a lockdown prison yard while incarcerated at the California State Prison, Corcoran, (hereinafter "Corcoran") pending transfer to another facility and, as a result, went over nine months without any form of outdoor exercise and was locked in his cell for 24 hours per day.

Plaintiff contends that by classifying him as a Southern Hispanic and assigning him to a facility that was on lockdown due to ongoing violent incidents between the Southern Hispanics and Fresno Bulldogs prison gangs, Defendants violated his "right to freedom from cruel and unusual punishment."

Pending before the Court for review is Defendants' Motion for Summary Judgment seeking judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure, based on (I) Plaintiff's failure to meet the objective requirement of his Eighth Amendment claim; and (II) a lack of evidence to suggest that Defendants harbored a subjective intent to violate the Plaintiff's Eighth Amendment rights or to suggest that Defendants inflicted unnecessary and wanton pain on Plaintiff by denying him outdoor exercise, or that they did so "maliciously and sadistically for the very purpose of causing harm."

Defendants contend that they are also entitled to qualified immunity because they reasonably believed that instituting a modified program in response to a series of violent incidents was lawful and served the purpose of securing the safety and security of the staff and inmates.

In response, Plaintiff argues that he has established genuine issues of material fact which preclude summary judgment as to whether the Defendants deliberately disregarded his physical and mental health, deprived him of the basic necessity of outdoor exercise and wantonly inflicted on him unnecessary pain and punishment, while he was incarcerated in Facility 3A pending transfer, in violation of his Eighth Amendment rights.

Before the Court for consideration is Defendants' Motion for Summary Judgment, Plaintiff's opposition thereto and the Defendants' reply.

**Factual Background**

Corcoran is a complex, multi-mission institution comprised of the following facilities: Level1, Level III, Level IV, Administrative Segregation Unit, Security Housing Unit, Protective Housing Unit, Prison Industry Authority and a fully licensed Acute Care Hospital.[1]

---

[1] Declaration of Derral Adams in Support of Defendants' Motion for Summary Judgment, ¶ 2. (Doc. #72-5)

1    Facility 3A within Corcoran, where Plaintiff was housed during his stay pending
2 transfer, is a Level IV General Population placement consisting of five buildings, three which
3 house general population inmates, with a total combined bed capacity of 600 inmates. Level
4 IV inmates pose higher risks and require a higher level of security.[2]

5    During Plaintiff's confinement in Corcoran's Facility 3A general population, inmates
6 from Housing Units 1, 2, 4 and 5 shared the Facility 3A recreation yard, to which the units
7 are released at the same time to use.[3]

8    There is a history of violent altercations between the Southern Hispanics and Fresno
9 Bulldogs at Corcoran, relevant to this action and in particular between September 2006 and
10 July 2008, the time period during which a series of violent clashes led to program
11 modifications for inmates classified as either Southern Hispanic or Fresno Bulldogs housed
12 in Facility 3A.[4]

13    Inmates placed on a modified program were subjected to restrictions, which included
14 but not limited to, being escorted in restraints during out-of-cell movement, receiving meals
15 in cells and restrictions from use of the recreation yard, phone calls and canteen.

16    Modification of programs were imposed on the Southern Hispanic inmates and Fresno
17 Bulldogs inmates following investigation and in response to particular incidences of violence
18 for "the purpose of securing the safety and security of the staff and inmates following a series
19 of violent incidents involving inmates from two disruptive gangs: Fresno Bulldogs and
20 Southern Hispanics."[5]

21    Plaintiff challenges his classifications and movement from administrative segregation
22 to Facility 3A general population.

---

[2]Id.

[3]Id.

[4]Id, ¶¶ 4 - 19; Exhibit A.

[5]Id, ¶ 20.

1    Plaintiff does not dispute that he is affiliated as a Southern Hispanic.[6]

2    While in Facility 3A general population, Plaintiff received the Program Status Reports from the prison administration advising him of the program modifications that resulted from the violent altercations between Fresno Bulldogs and Southern Hispanic inmates. As a Southern Hispanic inmate, Plaintiff was subjected to those modifications, including the restriction of access to the recreation yard, which was the location of several of the violent riots between the groups.

Plaintiff filed a "group" grievance complaining on behalf of all Southern Hispanic inmates about the lack of outdoor exercise. In response to his grievance, Plaintiff was interviewed by prison officials. The grievance sought additional privileges and outdoor exercise for Southern Hispanic inmates on Facility 3A, and was based on complaints that the Southern Hispanics as a group were restricted from use of the recreation yard on Facility 3A as part of the modified program created to protect the inmates and correctional staff.

Plaintiff clarifies that a security chain-link fence separates housing units 1 and 2 from housing units 4 and 5 for better control during outdoor exercise periods and that prison officials have ultimate control over who and when the outdoor recreation yard is used.[7]

Plaintiff does not dispute that he performed push-up exercises in his cell, but does dispute that in-cell exercise is an alternative to constitutionally protected outdoor exercise.

Plaintiff was seen by his prison doctor for headaches on December 11, 2007, and alleges he was advised that he had high blood pressure and was prescribed hydrochlorothiazide. Plaintiff did not inform any of the named Defendants that he had high blood pressure that he relates to a lack of outdoor exercise, and does not dispute that he had high blood pressure readings prior to his incarceration in Facility 3A.

On July 9, 2008, Plaintiff was transferred from Corcoran to Kern Valley State Prison and placed in general population.

---

[6]Deposition of Richard Aguirre, page 19, lines 15-23. (Doc. #72-8)

[7]Opposition to Defendants' Motion for Summary Judgment, page 1, Statement of Disputed Facts.

- 4 -

**Legal Standard**

Summary judgment is appropriate pursuant to Rule 56(a), Fed.R.Civ.P., when there exists "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." The moving party bears the responsibility of informing the district court of the basis for its motion and identifying what matters demonstrate the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the non-moving party to establish that a genuine dispute does exist as to a material fact. *Matsushita Elec. Industry Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). The opposing party need not establish that a material issue of fact is conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Service, Inc. v. Pacific Elec/ Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Material facts are those that may affect the outcome of the case; any dispute thereto is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986); *Long. v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

For purposes of reviewing a motion for summary judgment, all facts and evidence are viewed in the light most favorable to the nonmoving party. *Id.*; *Olsen v. Idaho State Bd of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004). To demonstrate that a genuine dispute exists, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

Plaintiff must demonstrate that a genuine dispute of material fact exists "as to whether defendants acted with deliberate indifference when they restricted inmates' access to outdoor exercise in response to security concerns." See *Norwood v. Tilton*, 2014 WL 2211419; *1

(citing *Thomas v. Ponder*, 611 F.3d 1144, 1150-51, 1155 (9th Cir. 2010); and further, that the Defendants "personally knew of and consciously disregarded an excessive risk to [Plaintiff's] health and safety." *Smith v. Yarborough*, 2014 WL 2696792, *1 (citing *Framer v. Brennan*, 511 U.S. 825, 834-35, 114 S.Ct. 1970 (1994).

## Discussion

### I. Eighth Amendment

Defendants submit that the deliberate indifference standard involves an objective and a subjective requirement. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 111 S.Ct. 2321 (1991)). Second, for the subjective requirement, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." *Id.*, 511 U.S. at 837.

Defendants argue that there is no evidence to support an actionable Eighth Amendment subjective intent by the Defendants, but rather the evidence shows that the prison officials were continuously, prudently, and successfully looking out for the safety and security of all prisoners and staff alike.

Defendants contend that, as prison officials, they have the "unenviable task of keeping dangerous men in safe custody under humane conditions," *Farmer*, 511 U.S. at 845 (quoting *Spain v. Procunier*, 600 F.2d 189, 193 (9th Cir. 1979)), and are entitled to deference in how the prisons are managed. Furthermore, prison officials have an Eighth Amendment duty to protect the Plaintiff and other inmates from harm.

In view of the history of violence between the two disruptive groups and failed attempts at reintroducing the groups into general population activities, Defendants argue that they had a duty to protect Plaintiff from attack by other inmates.

Defendants contend that Plaintiff's "lengthy opposition is replete with unsupportable opinions and irrelevant rhetoric but is lacking in actual evidence and applicable legal argument to support a jury verdict in his favor on the claims . . . ." Acknowledging that the Ninth Circuit states that "some form of regular outdoor exercise is extremely important to

the psychological and physical well being of . . . inmates," *Spain*, 600 F.2d at 199, Defendants emphasize that the court in *Spain* also acknowledges that "inclement weather, unusual circumstances, or disciplinary needs" may make regular outdoor exercise impossible.

In further reliance on *Spain*, Defendants argue that Plaintiff fails to support his claim that the lack of outdoor exercise is a clear constitutional violation, based on the undisputed fact that there was a history of violence between the two disruptive groups and Plaintiff's acknowledgment that he was affiliated as a member of the Southern Hispanics.

Defendants further argue that Plaintiff has not alleged, nor does the evidence show, that he "was somehow singled out or treated any differently than the other Southern Hispanic inmates in Facility 3A." Moreover, there is no evidence that suggests that the Defendants were seeking to inflict unnecessary and wanton pain on the Plaintiff by denying him outdoor exercise, or that they did so "maliciously and sadistically for the very purpose of causing harm." *LeMaire v. Maass*, 12 F.3d 1444, 1452 (9th Cir.1993)

Defendants conclude that Plaintiff's mere allegation that inmates were being deprived of outdoor exercise, is insufficient to give notice to correctional personnel that he would have potential consequences that relate to the claimed deprivation; nor did Plaintiff inform any of the named Defendants that he had high blood pressure that he relates to a lack of outdoor exercise.

Plaintiff argues that the deprivation of outdoor exercise for nine consecutive months, which resulted from his non-adverse transfer from an administrative segregation cell to general population, is a clear violation of his Eighth Amendment rights. Citing *Foster v. Runnels*, 554 F.3d 807 (9th Cir. 2009), Plaintiff also argues that an inmate seeking to prove an Eighth Amendment violation must "objectively show that he was deprived of something 'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Id*. at 812 (quoting *Farmer*, 511 U.S. at 834.)

Plaintiff argues that he was arbitrarily placed in Facility 3A pending transfer, and sets forth in detail the effects the deprivation of outdoor exercise can have on an inmate's

1 physical and mental health.  Plaintiff argues further that it was sufficiently obvious to the
2 Defendants that Facilty 3A provided no program opportunities for Plaintiff pending transfer
3 based on the correctional classification and regulations discussed.

4 Ninth Circuit law recognizes that some form of outdoor exercise is important to
5 maintaining the physical and mental health of prisoners.  *Spain,* 600 F.2d at 199-200.
6 Outdoor exercise, however, can be restricted and/or suspended under certain circumstances.
7 *Id.*; *Hoptowit v. Ray*, 682 F.2d 1237 (9th Cir. 1982).   Concurrent with the obligation to
8 provide some form of outdoor exercise, prison officials have a duty to prevent violence
9 within the prison.   *Farmer*, 511 U.S. at 833.  Thus, prison officials are accorded wide
10 deference in determining the methods necessary to restore and maintain order.  *Hayward v.*
11 *Procunier*, 629 F.2d 559, 603 (9th Cir. 1980).

12 The district court's analysis in *Rhinehart v. Cate,* 2014 WL 573495, is instructive on
13 the analysis of a deprivation of outdoor exercise claim for purposes of Eighth Amendment
14 review of conditions and confinement.  As the court explained, the Ninth Circuit, though
15 recognizing "that prolonged deprivations of outdoor exercise, *when combined with other*
16 *serious deprivations*, may give rise to an Eighth Amendment claim ... has also concluded that
17 the deprivation of outdoor exercise for long-periods of time does not offend the Eighth
18 Amendment when curtailment of such privileges are necessary to prison security." *Id.*, 2014
19 WL 573495, *8 (citing *Spain*, 600 F.2d at 199; *LeMaire*, 12 F.3d at 1458).

20 The court in *Rhinehart* relied in part on the holding of *Norwood v. Vance*, 591 F.3d
21 1062  (9th Cir. 2010), *cert. denied*, 131 S.Ct. 1465 (2011), in which the Ninth Circuit found
22 defendants were entitled to qualified immunity for deprivation of outdoor exercise during
23 four extended lockdowns over the course of two years because a reasonable officer could
24 have believed that restricting a plaintiff's outdoor exercise in the midst of ongoing prison
25 violence was consistent with the Eighth Amendment, *Id*. at 1068-70; and that "[t]he court
26 also concluded that prison officials' judgment was reasonable in concluding that permitting
27 outdoor exercise carried a greater risk of harm than denying outdoor exercise for extended
28 periods of time. *Id.* at 1070.  Moreover,

>Finally, the court mentioned several California district court cases which have similar fact patterns to Rhinehart's in support of the fact that no authority has clearly established a contrary conclusion that a reasonable officer could believe that restricting an inmate's outdoor exercise was inconsistent with the Eighth Amendment. *Id.* ("Not surprisingly, our district courts have found an absence of Eighth Amendment liability on facts similar to these. *See, e.g. Jones v. Garcia*, 430 F.Supp. 2d 1095, 1102-03 (S.D.Cal. 2006) (finding no Eighth Amendment violation where prisoner was denied outdoor exercise for ten months - double the longest single period that Norword's exercise was restricted-because of ongoing violence); *Hayes v. Garcia*, 461 F.Supp.2d 1198, 1201, 1207-08 (S.D.Cal. 2006) (same for nine-month denial of outdoor exercise); *Hurd v. Garcia*, 454 F.Supp.2d 1032, 1042-45 (S.D.Cal.2006) (same for five-month denial).").

2014 WL 573495, *8.

The district court's opinion in *Martinez v. Allison*, 2014 WL 1102704, emphasizes that "[a] prisoner's claim does not rise to the level of an Eight Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" 2014 WL 1102704, *15 (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citations omitted).

Upon review of the facts and the evidence presented in light of the legal authority cited, the Court finds that Plaintiff has failed to show that the Defendants "were aware of a 'substantial risk of serious harm" to [Plaintiff's] health or safety and that there was no 'reasonable justification for the deprivation in spite of that risk." *Id.* (citing *Thomas v. Ponder*, 611 F.3d at, 1150 (quoting *Farmer*, 511 U.S. at 844).

The Court further finds that "[t]he circumstances, nature, and duration of the deprivation" of which Plaintiff complains, balanced with the Defendants' obligation to maintain the safety and the security at Corcoran, and based on the evidence submitted and the history of violence between the Fresno Bulldogs and the Southern Hispanics, a gang with which Plaintiff acknowledges he was affiliated, do not rise to the level of being "grave enough to form the basis of a viable Eighth Amendment claim." *Id.* (citing *Johnson*, 217 F.3d at 731).

In view of the foregoing, the Court finds that Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

- 9 -

**II. Qualified Immunity**

Defendants contend that, assuming *arguendo* the Plaintiff could demonstrate a question of fact as to deliberate indifference with regard to outdoor exercise, each of the named Defendants are entitled to qualified immunity from damages based on the fact that there was no clearly established right which a reasonable correctional official would have known they were violating. See *Noble v. Adams*, 646 F.3d 1138, 1148 (9th Cir. 2011).

The modified lockdown procedures following violent incidents are clearly more analogous to those at issue in *Norwood*.

> [P]rison officials have a duty to keep inmates safe, and in particular to protect them from each other. Officials must balance this imperative against other obligations that our laws impose, such as providing outdoor exercise. When violence rises to unusually high levels, prison officials can reasonably believe it is lawful to temporarily restrict outdoor exercise to help bring the violence under control.

591 F.3d at 1066.

In the case at bar, following the series of violent attacks between these two disruptive groups, there is no doubt that the modified lockdown programs for multiple security reasons were justified. As the Ninth Circuit has stated, "these decisions are delicate ones, and those charged with them must be given reasonable leeway." *Hayward*, 629 F.2d at 603.

No evidence of any actionable Eighth Amendment subjective intent by the Defendants has been presented.

The defense of qualified immunity shields prison official from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

Plaintiff sets forth the two-part analysis established in *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001), which requires the Court to determine (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show Defendants' conduct violated a constitutional right; and (2) whether the right(s) was clearly established when viewed in the context of the case at bar. *Id*, 533 U.S. at 201.

Because the Court has determined in its review of Plaintiff's claim on the merits that no constitutional right has been violated based on the allegations and facts established on the record, "there is no necessity for further inquire[] concerning qualified immunity." *Id*.

**Conclusion**

The Court finds that Defendants are entitled to summary judgment. There is no evidence to suggest that Defendants were deliberately indifferent to Plaintiff in the restriction of outdoor exercise; nor has Plaintiff shown that Defendants imposed the modified program with a knowing disregard of an excessive risk to Plaintiff's health and safety.

Defendants have also shown that they are alternatively entitled to judgment on the basis of qualified immunity.

Based on the foregoing,

IT IS ORDERED that Defendants' Motion for Summary Judgment (Doc. #72) is GRANTED and this action is hereby dismissed;

IT IS FURTHER ORDERED that the Clerk of the Court is directed to enter judgment accordingly.

DATED this 30th day of September, 2014.

_____
Frank R. Zapata
**Senior United States District Judge**